# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **Corey Barrow,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Onshore Quality Control** | § | **No. 1:22-CV-00670-LY** |
| **Specialists, LLC** | § | |
| *Defendants* | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Corey Barrow's Motion to Remand, Dkt. 11, and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.       BACKGROUND

Barrow brings his Motion to Remand pursuant to his dispute with Onshore regarding which of two arbitration agreements governs his arbitration proceedings with Onshore for unpaid overtime wages under the Fair Labor Standards Act. Dkt. 12, at 1; Dkt. 11, at 2. Onshore employed Barrow as a pipeline inspector from November 1, 2018, through July 31, 2020. Dkt. 1-1, at 2; Dkt. 2, at 2. On November 12, 2018, at the start of his employment, Barrow executed the first of two arbitration agreements. Dkt. 1-1, at 10. In February 2021, after another company purchased Onshore, it amended its arbitration agreement and sought its employees' approval of

the changes. *Id.* at 5. Barrow executed the amended agreement on February 18, 2021. *Id.* at 21. The 2021 arbitration agreement modified several terms of the 2018 agreement including: setting a one-year deadline to file claims; imposing a mediation requirement prior to arbitration; and requiring claimants to pay Onshore's attorney's fees should Onshore prevail. *Id.* at 15-20.

When Barrow filed his arbitration demand in November 2021, Onshore directed him to the 2021 agreement and the mandatory-mediation clause. *Id.* at 5; Dkt. 2, at 4. The American Arbitration Association (AAA) denied Onshore's request to enforce the mediation clause and appointed an arbitrator to the parties' dispute. Dkt. 1-1, at 5.[1] In May 2022, Barrow filed a Motion to Compel and Enforce the [2018] Arbitration Agreement in Travis County District Court. *Id.* at 6. Onshore did not oppose Barrow's request that a court, rather than an arbitrator, determine whether the 2018 or 2021 agreement would govern the parties' arbitration proceedings. Dkt. 2, at 5. In June 2022, Barrow filed a petition for declaratory judgment in the 345th District Court in Travis County. Dkt. 1-1, at 2. The following month Onshore filed a notice of removal based on diversity jurisdiction. Dkt. 1, at 3. Now, Barrow requests that this Court remand the matter to Travis County District Court. Dkt. 11, at 1.

The parties admit that there is complete diversity between them, but dispute whether Onshore has met its burden of demonstrating that the amount in controversy requirement has been met. Dkt. 11, at 1; Dkt. 12, at 1. In Onshore's

---

[1] In its Original Answer, Dkt. 2, Onshore disputes that the arbitrator denied its request to enforce the 2021 agreement's mediation clause but admits that it has filed an objection to the jurisdiction of the arbitrator for "Barrow's failure to comply with the pre-suit requirements of the 2021 Agreement." Dkt. 2, at 4.

Notice of Removal, Dkt. 1, and in its response to Barrow's Motion to Remand, Dkt. 12, Onshore argues that, although Barrow did not specify an amount in controversy in his petition, the amount in controversy requirement is fulfilled by Barrow's request for declaratory judgment as well as Barrow's request for damages, costs, and fees. Dkt. 1, at 3-4. In his Motion to Remand, Dkt. 11, Barrow argues that his Petition for Declaratory Judgment concerns which arbitration agreement applies to the underlying arbitration dispute and that it is not apparent that there is any monetary value associated with his request to have the 2018 agreement, rather than the 2021 agreement, govern his arbitration with Onshore. *Id.* at 1. Barrow also argues that neither has Onshore met its burden by showing that his request for fees, damages, interests, and costs, exceeds the jurisdictional threshold. *Id.* at 7. The undersigned will address the parties' arguments below.

## II.     LEGAL STANDARD

Federal courts are courts of limited jurisdiction possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377).

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). District courts

have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy more than $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). In removals based on diversity jurisdiction under 28 U.S.C. § 1332(a), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2).

Where the plaintiff does not specify an amount in controversy, the party invoking federal jurisdiction bears the burden of establishing the amount in controversy by a preponderance of the evidence. *Hartford Ins. Group v. Lou-Con, Inc.,* 293 F.3d 908, 910 (5th Cir. 2002) (per curiam). In considering whether a party has met this burden, the court engages in a two-step process. *Id.* First, the court examines the complaint to determine whether it is facially apparent that the claims meet the jurisdictional minimum. *Id.* In the first step, the court determines whether the amount in controversy is facially apparent by looking "only at the face of the complaint and ask[ing] whether the amount in controversy is likely to exceed" the jurisdictional minimum. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1336 (5th Cir. 1995). If the amount in controversy is not facially apparent, then the court can move on to the second step, turning to "summary judgment type evidence" to guide its inquiry. *Hartford Ins. Group,* 293 F.3d at 910.[2]

---

[2] *See also Davalos v. Allstate Fire & Cas. Ins. Co.,* 522 F. Supp. 3d 240, 246 (W.D. Tex. 2021) (stating that in the Fifth Circuit, "defendants can carry their burden 'if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount'" (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002))).

If the court finds that the party invoking federal jurisdiction has met its burden of establishing that the amount in controversy exceeds $75,000 by a preponderance of the evidence, remand is appropriate only if a plaintiff can show "to a legal certainty" that his recovery will not exceed the jurisdictional threshold. *In re 1994 Exxon Chemical Fire,* 558 F.3d 378, 388 (5th Cir. 2009). Doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno,* 276 F.3d at 723. In a declaratory judgment action, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir. 1983).

## III.   DISCUSSION

Barrow's Petition for Declaratory Judgment before the 345th District Court in Travis County asked that court to render judgment "(1) awarding Plaintiff actual damages as requested herein, attorney's fees, exemplary damages, consequential damages, pre-judgment and post judgment interest and court costs; and (2) declaring that the arbitration agreement executed during his employment and not the post-employment amendment, covers his Fair Labor Standards Act claims against Onshore." Dkt. 1-1, at 7. Barrow's petition does not specify an amount in controversy. *Id.* However, Onshore argues that both the monetary relief requested, and the value of the declaratory judgment sought, exceed the amount in controversy requirement on their own. Dkt. 12, at 4-8. The undersigned will address each in turn.

### A.      Value of the Declaratory Judgment Action

In a declaratory judgment action, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Leininger,* 705 F.2d at 729. In this case Barrow seeks declaratory judgment regarding whether the 2018 or 2021 agreement governs arbitration proceedings with Onshore. Dkt 1-1, at 7. The parties disagree on the value of the right Barrow seeks to protect. Barrow asserts that there is no monetary value in an action seeking to have one agreement govern arbitration over another. Dkt. 11, at 1. Onshore argues that the value of the right Barrow seeks to protect is equal to the value of Barrow's underlying FLSA claim for unpaid overtime wages. Dkt. 1, at 3-4. Onshore estimates that Barrow could possibly recover $75,000 in alleged overtime wages, liquidated damages, and fees in the underlying arbitration if he succeeds on his FLSA claims. Dkt. 1, at 3-4; Dkt. 12, at 6. As a result, Onshore estimates the amount in controversy for the declaratory judgment action to be over $75,000. *Id.*

The parties disagree as to the proper analytical framework for determining the amount in controversy in this case. Onshore argues that "a court should look to the value of the underlying claims in order to determine the value of a declaratory judgment" and that in this case, doing so demonstrates that the amount in controversy requirement has been met. Dkt. 12, at 12. Meanwhile, Barrow argues that courts' authority to "look through" to underlying arbitration disputes to establish jurisdictional requirements has been abrogated by *Badgerow v. Walters,* 142 S. Ct. 1310, 1316 (2022). Dkt. 11, at 1.

Onshore relies on *Leininger* and *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998), for its argument that the Court should look to the value of Barrow's underlying FLSA claim to establish the value of the declaratory judgment action. Dkt. 12, at 5, 12. In *Leininger*, the court found that the amount in controversy had been met because "the object of the main demand by Leininger is to nullify the $105,000.00 Ohio state court judgment and enjoin its enforcement. The value of the right to be protected or the extent of the injury sought to be prevented was the amount of the judgment." 705 F.2d at 729. In that case, it was uncontested that the state court personal alimony judgment was for $105,000 and that appellee's demand was to vacate that judgment. *Id.*; *see also St. Paul Reinsurance Co.*, 134 F.3d at 1253-54 (finding jurisdictional threshold met in a declaratory-judgment suit involving insurance coverage, noting the "object of the litigation … and the value of the right to be protected is plaintiff's potential liability under th[e] policy," and that the "policy limits of $35,000, attorney's fees, and the 18 percent annum statutory damages … would likely exceed [the jurisdictional threshold]" (internal quotation marks omitted)).

In both cases the value of the declaratory judgment action was tied to the potential monetary value of the underlying suit, and the value of the underlying suit depended on the outcome of the declaratory judgment action. In this case, however, Onshore has not alleged that the amount of its potential liability in the underlying FLSA arbitration (and, therefore, the value of Barrow's right to be protected) depends on the outcome of the declaratory judgment action. Instead, Onshore relies on the

declaration of counsel Megan Coker that she has calculated Barrow's "alleged damages under the FLSA for allegedly unpaid overtime and miscalculation and they are greater than $75,000" and the conclusory argument that "[b]ecause the amount in controversy in a declaratory judgment action is 'the value of the right to be protected' and Barrow seeks to protect his FLSA claim by applying the 2018 arbitration to this dispute, the amount in controversy in this case is greater than $75,000." Dkt. 1-3, at 2-3. The undersigned finds that Onshore does not meet the standards set by either *Leininger* or *St. Paul* for establishing that the value of the underlying dispute meets the amount in controversy requirement and should be used as the basis for the value of the declaratory judgment action.

Barrow contests the propriety of "looking through" to the potential value of his underlying arbitration dispute to determine the value of his declaratory judgment action. Dkt. 11, at 6. For his argument, Barrow cites *Badgerow*, which ultimately stands for the proposition that in petitions to confirm, vacate, or modify an arbitral award, courts should look "only to the application actually submitted to the court, and it does not look through the application to the underlying substantive controversy between the parties." 142 S. Ct. at 1316. The Court contrasted its holding with the outcome in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), where the Court found that federal courts were statutorily authorized under Section 4 of the Federal Arbitration Act to "look through" to the underlying arbitration dispute when deciding whether they have jurisdiction to decide motions to compel arbitration. *Badgerow*, 142 S. Ct. at 1317-18. Since Barrow's petition here is not one to confirm, vacate, or modify an

arbitral award, nor a motion to compel arbitration, the undersigned agrees that *Vaden* and *Badgerow* are inapplicable.

Since the undersigned is unpersuaded by Onshore's argument that the value of the declaratory judgment action in this case is equal to the value of Barrow's underlying FLSA claim, Onshore has not established that the value of the declaratory judgment alone exceeds the amount in controversy requirement. Additionally, it is not facially apparent from the face of the complaint that the amount in controversy is likely to exceed the jurisdictional threshold in a declaratory judgment action seeking a determination as to which of two agreements governs an arbitration dispute. The undersigned agrees with Barrow—he doesn't plead, nor does Onshore show, that there is any monetary value associated with having the 2018 agreement, rather than the 2021 agreement, govern the parties' arbitration proceedings.

### B.     Value of Damages, Fees, Interests, and Costs

Onshore alleges that, in addition to the value of the declaratory judgment action, Barrow's damages request also exceeds the amount in controversy requirement. Dkt. 12, at 9. The undersigned turns to the value of Barrow's damages request to determine whether Onshore has met its burden to show that the amount in controversy requirement is met.

Defendants can carry their burden regarding the amount in controversy if it is facially apparent from the petition that the amount in controversy is likely satisfied. *Davalos*, 522 F. Supp. 3d at 246. In its Notice of Removal, Onshore states that the amount in controversy requirement "is apparent from the face of the complaint,"

citing Barrow's state court petition requesting "actual damages, attorney's fees, exemplary damages, consequential damages, pre-judgment and post-judgment interest and court costs." Dkt. 1, at 3-4; Dkt. 1-1, at 7. However, Onshore provides no evidence, nor points to any claims or causes of action in the petition that support this conclusion. *See Davalos*, 522 F. Supp. 3d at 247 (finding that the amount in controversy had likely been met, based on a demand letter from the Defendant, as well as arguments about the types of claims brought, including claims for property damage, physical and mental injures, excruciating pain, lost wages, medical expenses, and death). The undersigned finds that Onshore has not met the Fifth Circuit's "likely satisfied" standard for demonstrating satisfaction of the amount in controversy requirement. In fact, each of the categories of monetary relief Barrow requests in his petition are likely not recoverable in this context.

Turning first to attorney's fees—Onshore argues that "[h]ere the FLSA provides for a ***mandatory*** award of attorneys' fees if Plaintiff prevails on his claims" and thus, attorney's fees must be included in calculating the value of Barrow's claim for amount in controversy purposes. Dkt. 12, at 7-8. However, the state court petition that Onshore seeks to remove arises from the Texas Declaratory Judgment Act (DJA). Dkt. 1-1, at 7. And while the Texas DJA authorizes fees in *state* court, *see* Tex. Civ. Prac. & Rem. Code § 37.009, that provision is inapplicable in diversity cases because it is procedural, not substantive, law. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law").

Moreover, even if the Court were to consider the amount of fees Barrow may recover in his state court declaratory judgment action, neither party has come forward with any evidence of what that amount would be.

As to whether punitive damages may be included in the amount in controversy computation, the Court must determine whether punitive damages are recoverable as a matter of state law and whether the complaint "set[s] forth any facts that would justify an award of such damages in any amount." *St. Paul Reinsurance Co.*, 134 F.3d at 1254; *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 319 (5th Cir. 2012). In Texas, exemplary damages, "may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003(a). Barrow's Petition for Declaratory Judgment makes no claims that would warrant an award of exemplary damages. As in *Celestine*, where the plaintiff's "prayer [for punitive damages] alone cannot help him meet the required amount in controversy," 467 F. App'x at 319, neither can Barrow's prayer for exemplary damages merit their inclusion in Onshore's amount in controversy calculation.

Onshore has also failed to point to any statute or cause of action that would entitle Barrow to consequential damages as prayed for in his petition. In Texas, consequential damages are available in breach of contract claims to "compensate the plaintiff for foreseeable losses that were caused by the breach but were not a necessary consequence of it." *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638

S.W.3d 179, 186 (Tex. 2022). Consequential damages are not available unless they were foreseen as a probable result of breach and can be proved with reasonable certainty. *Id.* at 196. In the Fifth Circuit, if the face of the complaint allows the court to infer some incidental or consequential damages, but "gives no indication of how much these damages equaled[,] it is not facially apparent that [plaintiff's] total damages" meet the threshold requirement. *Scarlott v. Nissan N. Am., Inc.,* 771 F.3d 883, 889 (5th Cir. 2014). Barrow's Petition for Declaratory Judgment does not plead any facts that would allow the Court to infer that he had any consequential damages, much less give an indication of how much his consequential damages would be. As a result, Barrow's claim for consequential damages cannot contribute to the amount in controversy calculation.

In addition to the exclusion of attorney's fees, exemplary damages, and consequential damages, costs and interests are also excluded. *See* 28 U.S.C.A. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, *exclusive of interest and costs*." (emphasis added)). The undersigned is thus left to contend with whether actual damages on their own exceed the requirement.

Because Barrow's Petition for Declaratory Judgment does not plead a dollar amount of actual damages, Onshore is tasked with demonstrating by a preponderance of the evidence that the amount in controversy requirement has been met. *Hartford Ins. Group,* 293 F.3d at 910. Onshore relies on an affidavit from its counsel, Megan Coker, stating she "calculated Barrow's damages under the FLSA for

allegedly unpaid overtime and misclassification and they are greater than $75,000."
Dkt. 1-3, at 2. However, Onshore's response assigns that amount of wages to the value
of Barrow's right to be protected in its valuation of the Declaratory Judgment action,
not to its valuation of Barrow's request for actual damages. Dkt. 12, at 9. The only
acknowledgement Onshore gives to actual damages is in stating that actual damages
"at least in part stem[] from the allegations that 'Onshore breached its agreement to
arbitrate with Barrow.' Doc. 1-1 at 5." *Id.* Barrow, for his part, has attested that his
damages are less than $75,000. Dkt 11-1, at 2. At present, besides alluding to actual
damages being tied to its alleged breach of its agreement to arbitrate with Barrow,
Onshore has not demonstrated any dollar amount of actual damages that could form
part of the amount in controversy requirement.

The undersigned finds that Onshore has not met its burden to establish the
amount in controversy by a preponderance of the evidence in neither its valuation of
the monetary damages requested by Barrow, nor its valuation of the declaratory
judgment action seeking a declaration that the 2018 agreement governs his
arbitration with Onshore. The undersigned recommends that Barrow's Motion to
Remand, Dkt. 11, therefore, be granted and that Barrow's declaratory judgment
action be remanded to the 345th District Court in Travis County.

## IV.   RECOMMENDATION

In accordance with the foregoing discussion, the undersigned
**RECOMMENDS** that the District Court **GRANT** Barrow's Motion to Remand, Dkt.
11, and that Barrow's declaratory judgment action in the 345th District Court in

Travis County be remanded to that court for further proceedings. The referral of this case to the Magistrate Court is **CANCELED.**

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objection must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED November 10, 2022.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE